# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

In re:

BARBARA MURPHY BROWN,   Case No. 15-12027-RGM
(Chapter 13)

Debtor.

## MEMORANDUM OPINION

This case was before the court on September 3, 2015, on the chapter 13 trustee's motion to dismiss this case because the debtor was not eligible to be in chapter 13. The trustee argued that she was over the debt limit of $1,149,525 for secured debts. 11 U.S.C. §109(e).

The debtor attempted to show that the outstanding balance of the loan was less than the §109(e) eligibility limit. She testified that she and her non-filing husband borrowed $1,265,000 on June 27, 2008. They made payments until March 2010 when they sought to rescind the loan. The debtor presented two documents showing, she said, an outstanding loan balance of $1,143,404.28 as of September 1, 2013, and – notwithstanding that neither she nor her husband had made any payments on the loan – $1,078,513.03 as of September 1, 2015.[1] The documents show, in addition to the principal balances the debtor relies on, that the loan is a variable interest rate loan; that the interest rate changes annually as of August 1; that the payment changes annually as of September 1; and that the interest rate is the 1 Year LIBOR published daily in the Wall Street Journal plus a margin of 2.25%. In fact, the two documents are the 2013 and 2015 annual notices from the lender

---

[1] Debtor's counsel argued that the reduction of the principal loan balance from September 1, 2013 to September 1, 2015, resulted from the debtor and her husband paying the real estate taxes and insurance which, she argued, were in that same approximate – although not precise – amount. That argument is frivolous. A principal balance is reduced by payment to the lender, not by payment to third parties of real estate taxes and insurance.

showing the calculation of the new monthly payment and giving the debtor notice of the amount of the new monthly payment.

A change in the monthly payment of an adjustable rate mortgage is calculated in advance of the payment change date based on the contractually due principal balance as of the payment change date.[2] This is, in fact, what the June 24, 2013, letter shows. It states:

> Projected Principal Balance as of the Payment Change Date:   $1,143,404.28
> Remaining Loan Term as of the Payment Change Date:   300 months

There were, contractually, 300 payments due from September 1, 2013, to the end of the loan. Five years had elapsed on the 30-year loan made on June 27, 2008, and on which the first payment was due on September 1, 2008. Put another way, 60 months had elapsed out of a total of 360 months.

The second payment change letter was dated June 19, 2015. It states:

> Your new payment is based on the 1 YEAR LIBOR, your margin, your loan balance of $1,078,513.03, and your remaining loan term of 276.

There were, contractually, 276 payments due from September 1, 2015, to the end of the loan. Twenty-four months elapsed from the effective date of the June 24, 2013 payment change letter to the effective date of the June 19, 2015 payment change letter.

This is the proper manner in which to calculate the new payment. The contractually due principal balance as of the change date is the appropriate number rather than the principal balance actually due as of the change date. The actual outstanding principal balance cannot be known when the new payment is calculated about six weeks before the payment change date. Payments could be missed or late. (In this case, no payments were made after March 2010.) If the payment change

---

[2] Interest is paid in arrears. This means that the September payment includes interest that accrued during August. In this case, the loan was made on June 27, 2008. Interest due from June 27, 2008 through June 30, 2008 was paid at closing. The first monthly mortgage payment was due on September 1, 2008 at which included the interest that accrued in August 2008.

were calculated on the actual principal balance, the monthly payment would necessarily be higher than if it were calculated on the contractually due principal balance. If the debtor and her husband made all of the missed payments after receiving the payment change notification and continued with the higher monthly payments calculated on the actual outstanding principal balance, the monthly payments would payoff the loan in less than 30 years, depriving the debtor and her husband of the benefit of the longer loan term. By using the contractually due principal balance, if the debtor and her husband reinstated the loan and continued with the monthly payments, the loan would payoff at the end of the 30-year term as agreed by the parties. The principal balances shown on the payment change letters reflect what the principal balance would have been had the debtor made all contractually due mortgage payments. She admittedly stopped making payments after March 2010, and the principal balances shown on the two payment change letters understate the actual principal balances as of the date of the letters.

The court can estimate the principal balance as of March 2010 from the information presented by the debtor. The original loan amount was $1,265,000. It was a 30-year note. The interest rate was a variable rate which was prime plus a margin of 2.25%. The lowest interest rate possible is 2.25%, which assumes that the prime rate was zero, which it was not. Using a loan rate of 2.25% from June 27, 2008 through March 2010, the principal balance due as of April 1, 2010, can be computed. It was $1,217,394.45. This is simply a mathematical calculation. It makes assumptions in the light most favorable to the debtor. The resulting principal balance is above the §109(e) eligibility limit. In fact, the loan payoff is higher that this calculated principal balance because the 1 Year LIBOR was not zero during this period. In addition, interest accrued on the loan from March 1, 2010 through the petition date of June 11, 2015. Interest at the minimal rate of 2.25%

per annum as of the petition date would be about $141,500. The interest rate and the interest due when the petition was filed were higher. There are also late charges and other fees and costs. But, the principal balance calculation is sufficient to put the debtor over the §109(e) eligibility limit.

Debtor's counsel argues that the debtor and her husband rescinded the loan in March 2010. It is not entirely clear what counsel was arguing. If she was arguing that rescission *ipso facto* changed the secured loan to an unsecured loan, the debtor is significantly over the unsecured limit. If her argument is that rescission eliminates that loan, she overlooks the debtor's rescission obligation to put the lender in the same position, less certain fees and costs, as the lender was in before the transaction. It appears that debtor's counsel relies on *Jesinoski v. Countrywide Home Loans, Inc.,* 574 U.S. __, 135 S.Ct. 790 (2015). She appears to focus on that portion of the opinion discussing the elements of the common law right of rescission. Reliance is misplaced. The sole issue in that case was whether the borrowers timely rescinded the loan, not the effect of the rescission notice on the borrowers' obligations when they rescinded the transaction. They gave their rescission notice within the three-year period but did not file suit until after the three-year period. The lender argued that they were time-barred and that the transaction was, therefore, not rescinded. The lender argued that the common law doctrine of rescission applied and required that the borrower tender the loan amount at the time of rescission for there to be a valid rescission. The borrowers gave notice of the rescission but did not tender the rescission payment. The Supreme Court acknowledged the elements of the common law rescission but held that Congress created a new right of rescission that superceded common law rescission and that notice of the rescission was all that the statute required. Debtor's counsel appears to be arguing that because the common law element of rescission – making a tender of the rescission amount – is not required, the loan is rescinded on

notice and the debtor has no further obligation. In fact, the debtor has a further obligation upon giving notice of rescission and that is to make the appropriate rescission payment. This obligation is a claim in bankruptcy. 11 U.S.C. §101(5). Nor does it matter in this case whether the claim is a secured claim or an unsecured claim. Either way, the amount of the claim exceeds the applicable limit.

Debtor's counsel also appeared to argue that the deed of trust was invalid. There was no evidence that the deed of trust was defective or void.[3] Again, if it were, the debtor would be substantially over the unsecured debt limit of §109(e).

To the extent that debtor's counsel was arguing that the lender forfeited its loan, its right to repayment or its rescission payment, there was simply no evidence to support the argument.

Having determined that the debtor exceeds the eligibility limits in §109(e), the question is whether the case should be dismissed or the debtor be given time to consider conversion to chapter 11. The case will be dismissed because conversion would be futile – the debtor cannot formulate an effective chapter 11 plan – and because this case was filed in bad faith.

*Gilbert v. Residential Funding LLC,* 678 F.3d 271 (4th Cir. 2012) makes plain that there is a difference between giving notice of rescission and determining whether the loan is properly rescinded. Anticipating *Jesinoski v. Countrywide Home Loans,* the Court of Appeals held that notice of rescission was required to be given within three years of the closing but suit to enforce the rescission was not required to be filed within the three-year period. *Id.* at 277. Giving notice of rescission does not, however, mean that the transaction must be unwound. The Court of Appeals stated:

---

[3]Debtor's counsel raised this argument in her closing statement, but there were no facts in the record to support it.

> We must not conflate the issue of whether a borrower has exercised her right to rescind with the issue of whether the rescission has, in fact, been completed and the contract voided. . . . At this stage of the litigation, we are not concerned with whether the contract has been effectively voided. A court must make a determination on the merits as to whether that should occur.

*Id.*

The law of the Fourth Circuit is that after the borrower gives notice of rescission, the borrower must have the ability to tender the rescission amount within a reasonable time. The Court of Appeals stated that "[t]he equitable goal of rescission under [the Truth in Lending Act] is to restore the parties to the 'status quo ante.'" *Am. Mortg. Network, Inc. v. Shelton,* 486 F.3d 815, 820 (4th Cir. 2007). To achieve this, the borrower seeking rescission must be able to tender the borrowed funds back to the lender. Rescission is effected in a 3-step process under 15 U.S.C. §1635(b). First, the security interest in the home is voided and the borrower is not liable for any further payments. Second, the creditor has 20 days to refund any payments made in connection with the loan. Third, the borrower must tender the proceeds of the loan. Rescission should not be granted where it is clear that the borrower cannot or will not tender the borrowed funds to the creditor. 15 U.S.C. §1635(b); *Shelton,* 486 F.3d at 819-20. To do so would simply convert the secured lender to an unsecured lender with a claim against the borrower. That result would be inequitable and does not achieve the purpose of the statute which is to put the parties back into the position they were in prior to the loan.

If the borrower cannot tender the rescission payment within a reasonable time, the loan will not be unwound. In *Haas v. Falmouth Financial, LLC,* 783 F.Supp.2d 801 (E.D.Va. 2011), the District Court stated:

> Because rescission entails restoring the parties to the status quo ante, rescission cannot be granted where, as here, the borrower fails to demonstrate that he has the

>ability to meet his tender obligation. If plaintiff were allowed to achieve rescission without meeting his tender obligation, the lender would be reduced to an unsecured creditor. Such a result is not only inequitable, but it is inconsistent with the intent of Congress in drafting TILA.

*Id.* at 808.

Giving notice of rescission does not void the loan or cause the lender to *ipso facto* forfeit its loan. It only requires that the loan be unwound. The debtor must have the ability to tender the rescission amount within a reasonable time. This obligation is a claim in bankruptcy and, absent any other applicable factor, is a secured claim.[4] It is a claim that must be addressed in a chapter 11 plan. In this case, the debtor would not be able to tender a rescission payment or address it in a chapter 11 plan.

The debtor testified that neither she nor her husband had the ability to tender a rescission amount within 60 days. This testimony – and the fair inference from their circumstances that if they would ever be able to tender the rescission amount, it would be far in the future – is corroborated by the debtor's testimony, schedules and statement of affairs. The debtor's husband is a dentist. He suffered a back injury that prevents him from practicing dentistry because of the necessity to stand for long periods. He is receiving significant disability payments. She works in his dental practice in a non-medical capacity. They have no savings. The house is underwater – the debtor valued it at $900,000 on her schedules.

A chapter 11 plan based on a March 2010 rescission of the transaction will not work. They cannot pay the rescission amount from savings because they have none. They cannot sell the property and pay the rescission amount from the proceeds of sale because the house is worth less

---

[4] Another applicable factor could be that the deed of trust was defective in some manner or, perhaps, not recorded. In these instances, the lender would not have a secured claim, but it would have an unsecured claim.

than the payoff of the loan. They cannot reasonably be expected to qualify for a loan to refinance the lender in their present circumstances because they do not have enough income to support the required mortgage payment and because there is no equity in the property to support a refinance loan.

Nor does the debtor have the ability to cure the present mortgage arrearage in a chapter 11 plan. The debtor, even with the assistance of her co-debtor husband, does not have sufficient income to make the current mortgage payment and an arrearage payment.[5] Conversion to chapter 11 would be futile.

The case was filed in bad faith. There is only one creditor. The plan proposed monthly payments to the chapter 13 trustee of $3,000; however, he was to hold the payments until the debtor concluded her litigation with the lender. The current mortgage payment was not to be made. At the end of the plan, the arrearage might be cured, but there would be a new post-petition arrearage. The plan cannot be confirmed. *See* n.5.

The plan is illusory. The debtor has the right to dismiss her chapter 13 case at any time. 11 U.S.C. §1307(b). Upon dismissal, all funds that the trustee holds are repaid to the debtor. *Harris v. Viegelahn,* ___U.S. ___; 135 S.Ct. 1829 (2015). The debtor does not have the ability, even with her husband's assistance, to propose a traditional 60-month plan to repay the arrearage and make current mortgage payments. Nor does she have the ability to propose a plan providing that the

---

[5] The proposed chapter 13 plan proposes to pay $3,000 a month as the cure payment but no regular monthly payment. The debtor's budget show that she and her husband have sufficient income to pay the proposed $3,000 chapter 13 plan payment, but, there is no payment to the lender on the mortgage in the budget. The debtor proposes to pay real estate taxes and insurance, $1,340 and $500, respectively, but not the note payment. The combined payment as proposed by the debtor – $3,000, $1,340 and $500 for a total of $4,840 – is significantly smaller than that new payment amount shown on the June 19, 2015 change payment letter. The new monthly payment is $7,514.40. The budget does not have sufficient net disposable income to make the monthly mortgage payment and the arrearage payment. The debtor and her husband would need an additional $5,674 in monthly income to make the mortgage payment and the arrearage payment.

lender would be paid from the sale of her property. In reality, the debtor simply seeks to obtain the benefit of the automatic stay while she litigates or negotiates with the lender.[6] In light of the debtor's bad faith and futility of conversion to chapter 11, the court is not required to convert the case to chapter 11 if the debtor requested conversion under §1307.[7] *See Marrama vs. Citizen Bank of Massachusetts*, 549 U.S. 365, 127 S.Ct. 1105, 166, L.Ed. 2d 956 (2007) (a chapter 7 debtor acting in bad faith does not have an absolute right to convert to chapter 13); *In re Mitrano*, 472 B.R. 706 (E.D.Va. 2012) (a chapter 13 debtor acting in bad faith does not have an absolute right to dismissal of his case).

The debtor's case will be dismissed because she is not eligible to be a chapter 13 debtor and because the case was filed in bad faith.

Alexandria, Virginia
September 21, 2015

/s/ Robert G. Mayer
Robert G. Mayer
United States Bankruptcy Judge

Copy electronically to:

Thomas P. Gorman
Bobbie U. Vardan

20237

---

[6] The debtor's husband unsuccessfully sued the lender in the District Court. The details of the suit were not presented.

[7] Although the practice is to grant a debtor's motion to convert a chapter 13 cases to chapter 11, especially if there is a §109(e) problem, §1307(a) does not give a debtor the ***right*** to convert from chapter 13 to chapter 11. It only gives a debtor the right to convert to chapter 7.